IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ABIRA MEDICAL LABORATORIES, LLC d/b/a GENESIS DIAGNOSTICS** *Plaintiff*, v. **HARVARD PILGRIM HEALTH CARE, INC., AND HEALTH PLANS, INC.** *Defendants*. | **CIVIL ACTION NO. 24-158** |

MEMORANDUM

Baylson, J.                                                                                              October 14, 2025

## I.    INTRODUCTION

This action was brought by Plaintiff Abira Medical Laboratories, doing business as Genesis Diagnostics ("Plaintiff"), against Defendants Harvard Pilgrim Health Care, Inc. ("HPHC") and Health Plans, Inc. ("HPI") to recover unpaid and underpaid claims for laboratory testing services performed for patients insured by Defendants. In September 2024, the Court dismissed HPHC for lack of personal jurisdiction. ECF 35. The remaining claims against Defendant HPI are: (1) breach of contract (Count I), and (2) unjust enrichment (Count IV). Id. Defendant HPI filed a Motion for Summary Judgment on both remaining counts and a Rule 41(b) Motion to Dismiss. ECF 45–46, ECF 75–76. For the following reasons, Defendant HPI's Motion for Summary Judgment is **GRANTED** as to Counts I and IV, and Defendant HPI's Rule 41(b) Motion to Dismiss is **DENIED AS MOOT**.

## II.    FACTS

Plaintiff is a New Jersey limited liability company that operated medical testing laboratories in Pennsylvania. ECF 46-3, ¶ 4; ECF 54, ¶ 9; ECF 61, ¶ 4; ECF 67-2, ¶ 9; ECF 72,

1

¶ 9; ECF 78, ¶ 10.  Plaintiff performs laboratory testing on samples sent to it by patients' medical providers and thereafter submitted claims for payment to insurance providers.  ECF 46-3, ¶ 5; ECF 54, ¶ 9; ECF 61, ¶ 5; ECF 67-2, ¶ 9; ECF 72, ¶ 9; ECF 78, ¶ 10.

Defendant HPI is a third-party benefits administrator ("TPA") for various employers' self-insured health plans.  ECF 46-3, ¶ 9; ECF 61, ¶ 9; ECF 67-2, ¶ 10.  HPI is not a health plan or insurer.  ECF 46-3, ¶ 10; ECF 61, ¶ 10; ECF 67-2, ¶¶ 10, 13.  HPI contracts with employers who self-insure their employees' health benefits, and those employers pay for their employees' healthcare costs.  ECF 46-3, ¶ 11; ECF 61, ¶ 11; ECF 67-2, ¶ 10.  Defendant HPI has no members, only receives an administrative fee from employers, and does not receive any premium payments.  ECF 46-3, ¶¶ 11–12; ECF 61, ¶¶ 11–12.  Defendant HPI has no financial responsibility for employees' healthcare costs, and the administrative fee HPI receives is not affected based on whether reimbursement claims from providers are paid or not.  ECF 46-3, ¶¶ 11–12; ECF 61, ¶¶ 11–12.

Between 2016 and 2021, medical service providers submitted requisitions to Plaintiff for laboratory testing services on behalf of patients.  ECF 54, ¶ 13; ECF 67-2, ¶ 13; ECF 72, ¶ 13; ECF 78, ¶ 14.  Each requisition contained an assignment of benefits which assigned the patients' right to payment from the insurer and right to sue in the event of nonpayment to Plaintiff.  ECF 46-3, ¶ 18; ECF 54, ¶¶ 13–14; ECF 61, ¶ 18; ECF 67-2, ¶¶ 13–14; ECF 72, ¶¶ 13–14; ECF 78, ¶¶ 14–15.

Plaintiff contends that over 294 claims were submitted to Defendant HPI, and Plaintiff was paid for approximately 14 claims.  ECF 54 at 12; ECF 54-1, ¶ 12; ECF 61, ¶¶ 19, 24, 29–32, 38; ECF 72 at 12; ECF 72-1, ¶ 12; ECF 78 at 13–14; ECF 78-1, ¶ 12.  Plaintiff further contends Defendant HPI failed to provide a written denial and/or respond to a majority of the remainder of

Plaintiff's claims. ECF 54-1, ¶¶ 19–21; ECF 61, ¶¶ 14, 26, 28, 37, 39; ECF 72-1, ¶¶ 19–21; ECF 78-1, ¶¶ 19–21. Plaintiff alleges Defendant HPI either refused to pay and/or underpaid the claims, and Defendant HPI owes approximately $224,439.00 for the laboratory testing services. ECF 54, ¶¶ 11, 16; ECF 54 at 10; ECF 54-1, ¶¶ 20–21; ECF 72, ¶¶ 11, 16; ECF 72 at 10, 13–14; ECF 72-1, ¶¶ 20–21; ECF 78, ¶¶ 12, 18; ECF 78 at 11–12, 14, 17; ECF 78-1, ¶¶ 20–21.

In response, Defendant HPI contends there are only 220, not 294, claims at issue here, including two separate claims for the same insured on the same day. See ECF 46 at 4 n.5, 5–6, 12; ECF 46-3, ¶¶ 23–39; ECF 76 at 8–9, 14; ECF 80 at 1–2. Defendant HPI argues the other 74 claims listed on Plaintiff's Exhibit 2 involve HPHC-insured patients, which HPI is not responsible for. See ECF 54-2; ECF 76 at 5–7; ECF 79; ECF 80 at 6–8. Defendant HPI contends (and submits an affidavit from Jennifer Tisi and other evidence in support, see ECF 46-10) that for 34 of the 220 claims, HPI sent payment to Abira for the claim on behalf of the patients' self-insured employers. ECF 46 at 12; ECF 46-3, ¶¶ 24–28; ECF 46-10; ECF 76 at 14. Defendant HPI contends that 170 out of the 220 claims were misdirected to HPI, and Defendant HPI notified Plaintiff of these issues and Plaintiff did not respond. ECF 46 at 12; ECF 46-3, ¶¶ 33–37; ECF 76 at 14. Defendant HPI contends that, for a handful of alleged claims outside of these two categories, there is no evidence of any submission by Abira to HPI and/or Abira did not respond to requests from HPI for additional information. See ECF 46 at 8–9, 12; ECF 46-3, ¶¶ 38–39; ECF 76 at 14.

### III. PROCEDURAL HISTORY

Plaintiff originally filed its Complaint in the Court of Common Pleas of Bucks County on November 29, 2023, against Harvard Pilgrim Health Care, Inc. ("HPHC") and Health Plans, Inc. ("HPI"). ECF 1. Defendants removed the case to this Court on January 12, 2024. Id. Plaintiff

filed a First Amended Complaint ("FAC") against HPHC and HPI on April 18, 2024, ECF 18, and filed a Second Amended Complaint ("SAC") against HPHC and HPI on May 22, 2024, ECF 20.

On September 12, 2024, the Court dismissed Defendant HPHC for lack of personal jurisdiction. ECF 35, ¶ 1. The Court further dismissed Count II of the SAC for breach of the implied covenant of good faith and fair dealing and Count III of the SAC for violation of the Families First Coronavirus Response Act and the Coronavirus Aid, Relief, and Economic Security Act against Defendant HPI. Id. The only remaining counts in the SAC against Defendant HPI are:

- Count I for breach of contract as to Defendant HPI; and
- Count IV for quantum meruit / unjust enrichment as to Defendant HPI.

Id.

Defendant HPI filed a Motion for Summary Judgment, ECF 45, and accompanying Memorandum with exhibits, ECF 46, on April 30, 2025.[1] Plaintiff filed a Response to the Motion and to Defendant's Statement of Undisputed Facts on May 21, 2025. ECF 52–54. Defendant HPI filed a reply brief and supporting exhibits on June 11, 2025. ECF 67. Following oral argument on June 18, 2025 (ECF 70), the Court offered Plaintiff thirty (30) additional days to produce exemplars of the assignments relating to the claims in this case which allegedly created the parties' contractual relationship. ECF 69. The Court further ordered that, after Plaintiff's production, Defendant "shall then have thirty (30) days to take Mr. Miller's deposition if it chooses, renew its Motion for Summary Judgment, and/or attach new materials to its Motion." Id.

---

[1] Defendant HPI also filed a Rule 41(b) Motion to Dismiss. See ECF 46 at 14–18.

On July 18, 2025, Plaintiff produced a supplemental submission with an amended memorandum of law. ECF 72. On August 18, 2025, Defendant HPI filed a Renewed Motion for Summary Judgment with an accompanying memorandum and exhibits. ECF 75–76. Plaintiff filed a Response to the Renewed Motion for Summary Judgment with supporting exhibits on September 16, 2025. ECF 78–79. Defendant HPI filed a reply brief in support of its Renewed Motion on September 23, 2025. ECF 80.

IV.   **PARTIES' CONTENTIONS**

    **A. Breach of Contract (Count I)**

In Defendant HPI's Renewed Motion for Summary Judgment (ECF 76), Defendant HPI argues Plaintiff's breach of contract claim fails for four reasons.

    1.    Plaintiff's dispute is with HPHC, not Defendant HPI, and Defendant HPI is not responsible for claims Abira alleges it submitted to HPHC;

    2.    Abira sued HPHC in Massachusetts for the same claims it is litigating against Defendant HPI and should not be able to pursue parallel litigation;

    3.    Plaintiff's exemplars of assignments fail to show any connection to self-insured employer plans that Defendant HPI administered—or proof that the testing was covered by the various health plans; and

    4.    Plaintiff has not provided any evidence of (and Plaintiff's exemplars fail to show) the purported assignments with HPI or how Defendant HPI purportedly breached those terms. See ECF 76, ECF 80.

Defendant HPI incorporated by reference its initial Motion for Summary Judgment (ECF 46) and Reply Brief in Support of its Motion for Summary Judgment (ECF 67).[2] See ECF 76 at 4 n.4. Defendant HPI contends there was no contract between Abira and HPI, as Defendant HPI is a TPA for various employers' self-insured health plans, and therefore contracts with employers who self-insure their employees' health benefits (*i.e.*, the employers pay for their employee's healthcare costs). ECF 46 at 3–4; ECF 46-3, ¶¶ 9, 11. Defendant HPI has no financial responsibility for the employees' healthcare costs. ECF 46 at 4, 9; ECF 46-3, ¶ 12.

In response, Plaintiff contends:

1. A third-party benefits administrator such as Defendant HPI may be held liable for improper claims handling;

2. Patients executed assignments transferring Defendant HPI's obligations under preexisting contracts with insureds to pay insurance benefits directly to Plaintiff, and thus Plaintiff has standing to sue for claims payment; and

3. The assignments made Defendant HPI contractually obligated to pay benefits under Defendant HPI's usual and customary rates "arising under" insureds' health plans and Defendant HPI did not do so.

See ECF 54 at 2; ECF 72 at 9–14; ECF 78 at 10–18.

### B. Quantum Meruit / Unjust Enrichment (Count IV)

Defendant HPI next contends that Plaintiff's claim for quantum meruit / unjust enrichment fails because HPI received no benefit from the patients or Abira—as a TPA, HPI's fee for administering the plans is not impacted by whether claims are paid. See ECF 46 at 13–14; ECF

---

[2] Defendant HPI argued in a footnote in its initial Motion for Summary Judgment that four of Plaintiff's claims are barred by the four-year statute of limitations. See ECF 46 at 12 n.16.

46-3, ¶¶ 9, 12; ECF 67 at 8; ECF 76 at 15; ECF 80 at 8.  Rather, the money for the claims HPI pays belongs to the patients' self-insured employers.  ECF 46 at 9; ECF 46-3, ¶¶ 24–28; ECF 67 at 7; ECF 76 at 12; ECF 80 at 7.

Plaintiff contends that Plaintiff rendered the laboratory testing services, Plaintiff invoiced Defendant HPI for those services, and Plaintiff submitted claims for payment to Defendant HPI. ECF 54 at 13–15; ECF 72 at 14–15; ECF 78 at 18–19.  Therefore, Plaintiff argues Defendant HPI benefitted through receiving compensation for rendering administrative services, and Defendant HPI's compensation arose from handling the insurance policies.  ECF 54 at 13–15; ECF 72 at 14–15; ECF 78 at 18–19.  Plaintiff argues Defendant HPI was required to pay outstanding invoicing for health-related services rendered to those patients, and thus received a windfall of $224,439.00 by not paying for the laboratory testing services that Plaintiff performed.  ECF 54 at 13–15; ECF 72 at 14–15; ECF 78 at 18–19.

### C. Failure to Prosecute (Fed. R. Civ. P. 41(b))

In addition, Defendant HPI argues this case should be dismissed with prejudice for failure to prosecute under Fed. R. Civ. P. 41(b) because Plaintiff failed to substantiate its allegations in the SAC and failed to comply with its discovery obligations.  ECF 46 at 14–18.  Defendant HPI contends that Abira "did not respond to HPI's repeated efforts to coordinate" document exchanges, did not produce documents relating to Defendant HPI or the claims at issue here, and the responses Abira did provide "fell far short of meeting its discovery obligations."  Id.

In response, Plaintiff argues it has responded to and complied with all discovery obligations.  See ECF 54 at 15–19; ECF 72 at 16–21; ECF 78 at 19–24.  Plaintiff outlines numerous actions taken, including serving Rule 26 initial disclosures, timely responding to Defendant HPI's written discovery requests, and producing documents.  See ECF 54 at 15–19;

7

ECF 72 at 16–21; ECF 78 at 19–24.  Plaintiff further contends that Defendant "never filed a motion to compel, nor asserted any issue in this case relative to Plaintiff's alleged failure to prosecute its claims." See ECF 54 at 15–19; ECF 72 at 16–21, ECF 78 at 19–24.

V. **LEGAL STANDARD**

    A. <u>**Summary Judgment**</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### B. Fed. R. Civ. P. 41(b)

District courts may dismiss a case upon motion "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order[.]" Fed. R. Civ. P. 41(b). Before dismissing a case, district courts in the Third Circuit must consider the six factors outlined in Poulis v. State Farm Fire and Casualty Company, 747 F.2d 863 (3d Cir. 1984):

> (1) The extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

Id. at 868.

## VI. DISCUSSION – MOTION FOR SUMMARY JUDGMENT

### A. Breach of Contract (Count I)

The Court begins by noting the absence of materials from the record in Plaintiff's multiple Responses (see ECF 54, ECF 72, ECF 78) to support its claims. Though Plaintiff brings a claim for breach of contract, Plaintiff did not attach any contract. See ECF 20, ECF 54, ECF 72, ECF 78. It is an elementary principle of contract law that Plaintiff's breach of contract claim cannot survive without a valid contract existing between HPI and Plaintiff. See Ecore Int'l, Inc. v. Downey, 343 F. Supp. 3d 459, 485 (E.D. Pa. 2018) (Surrick, J.) (under Pennsylvania law, plaintiff must establish the existence of a contract, including its essential terms, for a breach of contract claim) (citing Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003)). And here, Plaintiff admitted (and thus it is now undisputed) that no contract exists between Abira and HPI. ECF 46-3, ¶ 16; ECF 61, ¶ 16; ECF 71; ECF 76 at 8 n.9.

Rather, Plaintiff stakes its breach of contract claim on alleged assignments, whereby patients assigned their right to reimbursement to Plaintiff. See ECF 54, ¶¶ 13–14; ECF 72, ¶¶ 13–14; ECF 78, ¶¶ 14–15. "An assignment purports to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf." Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield, 890 F.3d 445, 454 (3d Cir. 2018) (citing Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 271 (2008)). According to Abraham Miller's declaration, patients executed assignments. See ECF 54-1, ¶¶ 14, 16; ECF 72-1, ¶¶ 14, 16; ECF 78-1, ¶¶ 14, 16. That is sufficient to create a dispute of material fact; however, as discussed below, the evidence Plaintiff produced does not support this claim.

Following the June 18, 2025, Motion for Summary Judgment hearing (ECF 70), the Court ordered Plaintiff to produce exemplars of the assignments executed by patients relating to the claims in this case which allegedly created the parties' contractual relationship. ECF 69. On July 18, 2025, Plaintiff submitted 18 exemplars of assignments. See ECF 72-2.

Plaintiff is correct that there are assignments but is mistaken as to what contractual obligations arose from those assignments. The assignments allowed patients to assign the right to collect insurance benefits to Abira. ECF 54, ¶¶ 13–14; ECF 54 at 9–13; ECF 54-1, ¶¶ 14, 16; ECF 72, ¶¶ 13–14; ECF 72 at 9–14; ECF 72-1, ¶¶ 14, 16; ECF 72-2; ECF 78, ¶¶ 14–15; ECF 78 at 10–15; ECF 78-1, ¶¶ 14, 16. But Plaintiff has produced no evidence that these assignments created a contractual relationship **with HPI**—the exemplars Plaintiff produced show only that the patient assigned the right to collect insurance benefits to Abira, and the insurers listed were (1) blank, (2) "Harvard" or "Harvard Pilgrim," or (3) "Health First." See ECF 72-2; ECF 76 at 9–10; ECF 79-3. None of the assignments mention Defendant HPI. See ECF 72-2; ECF 76 at 9–10; ECF 79-3; ECF 80 at 2–3.

Indeed, there is no mention of HPI here because HPI, as a TPA, is acting in an administrative role for certain self-insured employer health plans. ECF 46 at 9; ECF 46-3, ¶¶ 9, 11; ECF 61, ¶¶ 9, 11; ECF 67 at 2; ECF 67-2, ¶ 10; ECF 76 at 6–7, 12; ECF 80 at 2, 6–7. HPI is not acting on behalf of HPHC. ECF 46 at 9; ECF 46-3, ¶¶ 2–3, 21; ECF 61, ¶¶ 2–3, 21; ECF 67 at 2, 6–8; ECF 67-2, ¶ 10; ECF 76 at 6–7; ECF 80 at 2, 6–7. Thus, any assignment relating to HPI would be the patient assigning to Abira the right to collect insurance benefits from **the patients' employers, not HPI**. ECF 46 at 9; ECF 46-3, ¶¶ 13, 26; ECF 54, ¶ 16; ECF 61, ¶¶ 13, 26; ECF 67 at 2–4, 6–7; ECF 67-2, ¶¶ 10–11, 13, 16; ECF 76 at 12; ECF 80 at 6–7. Plaintiff produced no evidence to show Defendant HPI has a contractual relationship with the patients, such that the patients could assign their rights to Abira. ECF 46 at 9–12; ECF 46-3, ¶¶ 16, 18, 32; ECF 54 at 10–13; ECF 67 at 2–5; ECF 72 at 11–14; ECF 76 at 8, 12–13; ECF 78 at 12–15; ECF 80 at 3–4. Rather, the spreadsheets Plaintiff provided in Exhibits 2–4 show claims relating to HPHC-insured patients and thus the patients would have assigned **HPHC's** right to collect insurance benefits to Abira. ECF 54-2; ECF 54-3; ECF 54-4; ECF 76 at 8–11; ECF 79. HPI is not involved with those HPHC claims, as HPI was not the TPA nor the payor—HPHC is. See ECF 76 at 5–7; ECF 80 at 6–8, 8 n.3. And it is undisputed that though they are both affiliates of Point32Health, HPHC and HPI are separate companies. ECF 46-3, ¶¶ 2–3; ECF 61, ¶¶ 2–3.

The Parties dispute the number of claims at issue here and the number of claims for which Abira was paid. See ECF 54, ¶¶ 11, 16; ECF 54 at 10, 12; ECF 54-1, ¶¶ 12, 19–21; ECF 61, ¶¶ 14, 19, 24, 26, 28–32, 37–39; ECF 72, ¶¶ 11, 16; ECF 72 at 10–14; ECF 72-1, ¶¶ 12, 19–21; ECF 78, ¶¶ 12, 18; ECF 78 at 11–14, 17; ECF 78-1, ¶¶ 19–21 (Abira contending there are 294 claims at issue, Abira was paid for approximately 14 claims, and Defendant HPI failed to respond to a majority of the remainder of Plaintiff's claims); see also ECF 46 at 4 n.5, 5–6, 8–12; ECF 46-3, ¶¶

11

23–39; ECF 46-10; ECF 76 at 5–6, 8–11, 14; ECF 80 at 1–2 (Defendant HPI contending there are 220 claims at issue, Defendant HPI remitted payment on behalf of those patients' self-insured employers for 34 claims which were not disputed by Abira, and the 170 or so other claims are HPHC claims and do not mention HPI). Defendant HPI submitted evidence establishing there are 220 claims[3] relating to HPI (including two separate claims for the same insured on the same day), and Defendant HPI properly processed each claim received from Abira, through either paying the claim, sending a "MIS" letter for a "misdirected" claim, or communicating with Abira about an open issue and Abira never responded. See ECF 46 at 5–9; ECF 46-3, ¶¶ 23–39; ECF 46-10; ECF 76 at 4 n.5, 10–11, 11 n.14, 14; ECF 80 at 1–2. Beyond Abraham Miller's Declarations (ECF 54-1; ECF 72-1; ECF 78-1), Plaintiff did not provide evidence to the contrary—*i.e.*, that Plaintiff reached out to or communicated with Defendant HPI regarding the disputed claims—as is its burden at this point. See ECF 54; ECF 72; ECF 78. Nevertheless, since there is no contractual relationship (including any assignment) between HPI and Abira, the number of claims at issue does not create a genuine dispute of fact.

"Only a party to a contract can be liable for breach of that contract." McLaren v. AIG Domestic Claims, Inc., 853 F. Supp. 2d 499, 513 (E.D. Pa. 2012) (Gardner, J.) (citing Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1991)). This basic axiom precludes claims for breaches of contract "against related parties" to the insurer, "such as reinsurers and third

---

[3] The other 74 claims listed on Plaintiff's Exhibit 2 (which is the same as Exhibit 1 to Plaintiff's Second Amended Complaint, see ECF 20) involve HPHC-insured patients, which HPI is not responsible for, and Plaintiff did not submit evidence to the contrary. See ECF 54-2; ECF 76 at 5–7; ECF 79; ECF 80 at 6–8. Moreover, the Court notes Plaintiff's Exhibits 3 and 4 are incomprehensible and mention only HPHC-insured patients, which, as discussed above, HPI is not responsible for, and Plaintiff did not submit evidence to the contrary. See ECF 54-3; ECF 54-4; ECF 76 at 5–7; ECF 79; ECF 80 at 6–8.

party administrators, who are not in privity with the insured." Brand v. AXA Equitable Life Ins. Co., No. 08-cv-2859, 2008 WL 4279863, at *2 (E.D. Pa. Sept. 16, 2008) (Bartle, J.).

Plaintiff cites a slew of cases for the uncontroversial proposition that a health care provider or benefits administrator, such as Defendant HPI, may be held liable for its administration of claims processing. See ECF 54 at 8–9 (citing New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125 (2d Cir. 2015); LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc., 703 F.3d 835 (5th Cir. 2013); Cyr v. Reliance Standard Life Ins. Co., 642 F.3d 1202 (9th Cir. 2011) (en banc); Gomez-Gonzales v. Rural Opportunities, Inc., 626 F.3d 654 (1st Cir. 2010)); ECF 72 at 9 (same); ECF 78 at 10 (same). Of course this is true. But the cases Plaintiff cites give a plaintiff standing to sue a benefits administrator in the context of ERISA litigation, a highly specific cause of action arising under federal law—a cause of action not at issue here. See ECF 54 at 8–9; ECF 72 at 9; ECF 78 at 10.

Plaintiff raises a new argument in its Second Amended Memorandum of Law in Opposition to Defendant HPI's Renewed Motion for Summary Judgment (ECF 78) that Defendant HPI was contractually obligated to pay benefits under Defendant HPI's usual and customary rates "arising under" insureds' health plans, and Defendant HPI did not do so, breaching contractual payment obligations under the assignments. ECF 78 at 15–18. But, as discussed above, there is no contractual relationship (including any assignment) between HPI and Abira. See ECF 46-3, ¶ 16; ECF 61, ¶ 16; ECF 76 at 8 n.9. Thus, there is no evidence that establishes what those rates are or that the insurance plans had such a clause. See ECF 76 at 11–12; ECF 80 at 4. Any breach of contract claim (via an assignment) for the set of HPHC claims listed in Plaintiff's Exhibits 2–4 (see ECF 54-2; ECF 54-3; ECF 54-4; ECF 72-2; ECF 79) would be against HPHC, because those claims involve HPHC-insured patients. See ECF 46 at 4 n.5; ECF 76 at 5–7; ECF 80 at 6–7.

Moreover, Plaintiff's purported authority is inapplicable, as the cited cases all arise under Texas law, are in the ERISA context, involve valid contracts with insurers, and are at the motion to dismiss stage. See ECF 78 at 16. Here, on a motion for summary judgment for a non-ERISA breach of contract claim under Pennsylvania law, it is undisputed that HPI is not an insurer and there is no valid contract between Abira and HPI. See ECF 46-3, ¶¶ 10, 16; ECF 61, ¶¶ 10, 16; ECF 76 at 8 n.9.

On a motion for summary judgment, "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Unfortunately for Plaintiff, the dearth of record evidence undermines its assertion that disputes of material fact are "genuine;" *i.e.*, a showing that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Plaintiff has not shown any contractual relationship (including any assignment) between HPI, the benefits administrator, and the patients at issue. Thus, there is no privity of contract to support a claim for breach of contract. Brand, 2008 WL 4279863, at *2 (precluding claims for breaches of contract "against related parties" to the insurer, "such as reinsurers and third party administrators, who are not in privity with the insured").

Without privity of contract—either as direct parties to the contract or through an assignment—Plaintiff's claim for breach of contract cannot stand. The Court will therefore **GRANT** summary judgment to Defendant HPI and **DISMISS** Count I of the SAC (breach of contract).

### B. Quantum Meruit / Unjust Enrichment (Count IV)

In the absence of a valid contract, quantum meruit is "a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment." Allegheny Gen. Hosp. v. Philip

14

Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2000) (citation omitted). In other words, quantum meruit "creates an implied promise between parties in the absence of a contract to prevent unjust enrichment." Burton Imaging Grp. v. Toys "R" Us, Inc., 502 F. Supp. 2d 434, 440 (E.D. Pa. 2007) (Brody, J.). Quantum meruit is an "equitable remedy" for the "reasonable value of services performed," Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 531 n.8 (Pa. 2010), and "raises the issue of whether a party has been unjustly enriched," Mitchell v. Moore, 729 A.2d 1200, 1202 n.2 (Pa. Super. Ct. 1999).

A plaintiff must prove the same elements for quantum meruit and unjust enrichment. See Allegheny Gen. Hosp., 228 F.3d at 447. To prevail on a claim of quantum meruit, the plaintiff must establish: "(1) the plaintiff conferred benefits on the defendant, (2) the defendant appreciated such benefits, and (3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." Berardi v. USAA Gen. Indem. Co., 606 F. Supp. 3d 158, 163 (E.D. Pa. 2022) (Baylson, J.) (citing Mitchell, 729 A.2d at 1203), aff'd, No. 22-2231, 2023 WL 4418219 (3d Cir. July 10, 2023).

Here, Plaintiff alleged quantum meruit in the alternative if the Court determined that there was no contract between Plaintiff and Defendant HPI. ECF 54 at 2; ECF 72 at 14–15; ECF 78 at 18–19. As discussed above, there is no contract between Abira and HPI, and the purported assignments do not create a contract between Abira and HPI. ECF 46-3, ¶ 16; ECF 61, ¶ 16; ECF 72-2. Therefore, to prevail on quantum meruit, Plaintiff would need to show that Defendant HPI accepted benefits from Plaintiff, and that it would be inequitable for Defendant HPI to retain the benefits without payment of value. See Berardi, 606 F. Supp. 3d at 163. But Defendant HPI contends that HPI received no benefit from the patients or Abira—as a TPA, HPI's administrative fee for administering the plans is not impacted by whether claims are paid. See ECF 46 at 13–14;

15

ECF 46-3, ¶¶ 9, 12; ECF 76 at 15. Rather, the money for the claims Defendant HPI pays—including the money Abira received for the 34 claims Defendant HPI paid to Abira—belongs to the patients' self-insured employers. ECF 46 at 12; ECF 46-3, ¶¶ 24–28; ECF 76 at 14.

The Court will **GRANT** summary judgment to HPI and **DISMISS** Count IV of the SAC (quantum meruit / unjust enrichment) because Defendant HPI shows, without dispute, that it did not receive any benefit (financial or otherwise) from the lab testing services at a detriment to Plaintiff. See Berardi, 606 F. Supp. 3d at 163. HPI is a TPA and does not have "members," and HPI's administrative fees from its customers (who are employers) are not impacted by whether claims are paid. ECF 46 at 13–14; ECF 46-3, ¶¶ 9, 11–12; ECF 76 at 15. Plaintiff did not adequately dispute this—Plaintiff simply argued, without producing evidence in support, that Plaintiff rendered the laboratory testing services, Defendant HPI was compensated for rendering administrative services, Defendant HPI's compensation arose from handling the insurance policies, and that Defendant HPI received a windfall of $224,439.00 by not paying for the laboratory testing services. See ECF 54 at 13–15; ECF 72 at 14–15; ECF 78 at 18–19. Plaintiff also did not genuinely dispute Defendant HPI's status as a TPA or that Defendant HPI's fees are not impacted by whether claims are paid. ECF 61, ¶¶ 9, 12. Rather, Plaintiff stated, "Defendant is the party primarily responsible for administering insureds' health insurance policies, and paying benefits arising under same." ECF 61, ¶¶ 10–13. Accordingly, Plaintiff has not shown that Defendant HPI was unjustly enriched or received a benefit by allegedly withholding payment to Plaintiff for laboratory testing services.

### VII. DISCUSSION – FED. R. CIV. P. 41(B) MOTION TO DISMISS

Lastly, Defendant HPI brings a Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b), based on Plaintiff's alleged failure to substantiate its allegations in the SAC and failure to comply with

discovery obligations. ECF 46 at 14–18. Defendant HPI raised this argument in its initial Motion for Summary Judgment (ECF 46), which was incorporated by reference into its Renewed Motion (ECF 76).

Since the Court will grant summary judgment on both remaining Counts in the SAC, the Court will **DENY AS MOOT** Defendant HPI's Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b). See ECF 46 at 14–18. In any event, Defendant HPI never filed a motion to compel, requested a telephone conference, nor provided any substantive challenge to Plaintiff's prosecution of the case. See ECF 54 at 15–19; ECF 72 at 16–20; ECF 78 at 19–24.

### VIII. CONCLUSION

An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-158 Abira Med Lab v. Health Plans INc\24cv158 Memo. re SJ.docx